UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BETTY CUTTINO, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:04CV575 (MRK) |
| | : | |
| v. | : | |
| | : | |
| GENESIS HEALTH VENTURES, INC., | : | |
| | : | |
| Defendant. | : | |

**RULING AND ORDER**

Plaintiff Betty Cuttino sues her former employer, Defendant Genesis Health Ventures, Inc. ("Genesis"), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d). Ms. Cuttino alleges that her employment with Genesis was terminated because of her race, age, and gender and in retaliation for complaints about past discrimination. Genesis has moved for summary judgment on all claims and for the attorney's fees and costs associated with taking Ms. Cuttino's March 15, 2005, deposition. For the reasons that follow, the Court GRANTS Genesis's summary judgment motion [doc. #43] and DENIES its motions in limine for attorney's fees and costs [docs. ##44 & 45].

**I**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(b). A genuine factual dispute exists when "a reasonable jury could return a verdict for the nonmoving party." *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon mere allegations or denials," but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In considering a motion for summary judgment, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen*, 477 U.S. at 249-50.

## II

The following facts are undisputed unless otherwise indicated. Defendant Genesis owns and manages nursing homes throughout Connecticut. Plaintiff Betty Cuttino, an African-American female in her forties, worked as a business office manager at a nursing facility owned by a company that Genesis acquired. In February 1999, Ms. Cuttino was promoted to regional business office coordinator (ReBOC), working directly under Harriet Albert-Smith. In April 1999, Ms. Cuttino expressed concerns to Ms. Albert-Smith regarding the fact that Ms. Cuttino was making less than other Genesis office managers and bookkeepers. Later, Ms. Cuttino again raised the issue of wage disparities, pointing out that she made less than a younger employee named Michelle Gaul, a favorite of Ms. Albert-Smith whom Ms. Cuttino believes had less experience. Genesis claims that Ms. Gaul

and Ms. Cuttino had comparable experience, that Ms. Gaul's and Ms. Cuttino's salaries were set by separate companies before their acquisition by Genesis, and that Ms. Albert-Smith believed Ms. Gaul to be a better worker. Nevertheless, in June 2000, Genesis raised Ms. Cuttino's salary at the instance of Ms. Albert-Smith so that Ms. Cuttino's compensation would be more in line with Ms. Gaul's. Ms. Cuttino's salary was again raised in February 2001.

In September 2001, Genesis created the new position of ReBOC manager, which had supervisory responsibility over ReBOCs. Genesis promoted Ann Lynn to the position of ReBOC manager, making her Ms. Cuttino's supervisor. Ms. Lynn gave Ms. Cuttino additional office manager and bookkeeper training. Shortly thereafter, Ms. Lynn discovered some bookkeeping errors by Ms. Cuttino, and in mid-January 2002, Ms. Lynn and Ms. Cuttino both signed a memorandum indicating that Ms. Cuttino had made errors and outlining "Corrective Action" steps, including more training and progress reviews. Ms. Cuttino and Ms. Lynn apparently argued over progress-review meeting times and locations. Genesis maintains that Ms. Cuttino's behavior after the Corrective Action memo was unprofessional and at times hostile.

In early February 2002, in preparation for her annual review, Ms. Cuttino sent a self-evaluation form and other documents in an email to Ms. Lynn and Ms. Albert-Smith. The documents described frustrations that Ms. Cuttino had with the way she believed she had been treated (including her lack of equal pay). Ms. Cuttino met with Ms. Albert-Smith, Ms. Lynn, and Vice President-Regional Controller Ken Cullerot, and Ms. Cuttino was warned that she would be terminated if she continued what Mr. Cullerot called her "insubordinate" behavior towards Ms. Lynn, behavior that Mr. Cullerot outlined in a letter. The letter drew on statements about Ms. Cuttino made by Ms. Lynn, and it used words such as "lying," "violent," "threatening," and "angry" to describe Ms.

3

Cuttino. Ms. Cuttino objected to the language contained in the letter, and the next day Mr. Cullerot gave Ms. Cuttino a modified letter that omitted the terms "violent" and "lying."

On February 20, 2002, Ms. Lynn received a call from one of Genesis's nursing home clients, Windsor Hall, which complained that its expenses were unfairly high. Ms. Lynn reviewed the accounts and discovered that credits had not been properly applied to patient accounts. Genesis asserts that Ms. Cuttino was responsible for training the bookkeeper to apply credits to the Windsor Hall account. Ms. Cuttino does not deny the existence of these problems but says she had been working with the bookkeeper to try to correct the situation. Ms. Lynn directed Ms. Cuttino to correct the problem by the end of the month, which Ms. Cuttino did not do. Ms. Cuttino acknowledges that the problem was not corrected as directed, but she claims that the failure to correct the problem was not her fault. Genesis maintains that there were also problems with other aspects of the Windsor Hall account for which Ms. Cuttino was responsible.

Following the Windsor Hall incident, Ms. Lynn recommended that Ms. Cuttino be fired because of her performance failures and "lack of understanding of fundamental accounting and bookkeeping practices." Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment [doc. #43-3] Ex. 8 at ¶ 26. Ms. Albert-Smith, in conjunction with Mr. Cullerot and Regional Human Resources Director James Dillon, made the decision to accept Ms. Lynn's recommendation and to fire Ms. Cuttino. According to Ms. Albert-Smith, she fired Ms. Cuttino for her performance failures and lack of understanding of accounting and bookkeeping. At a March 14, 2002, meeting, Ms. Cuttino was told that she was being fired because of her performance issues and because Genesis did not anticipate her work improving.

Ms. Cuttino was replaced by an African-American female who was younger than Ms.

Cuttino. At the time of Ms. Cuttino's termination, five of the six ReBOCs in her region were female and two of the five other ReBOCs were older than Ms. Cuttino. Also, Ms. Albert-Smith is older than Ms. Cuttino. Ms. Cuttino initiated this lawsuit in April 2004, alleging that Genesis had fired her because of her race, age, and gender and in retaliation for her complaints about past instances of discrimination.

### III

#### A.   Gender Discrimination

Ms. Cuttino originally maintained that she had been terminated, in part, based on her gender, and she alleged violations of Title VII and the Equal Pay Act. However, at oral argument held on December 5, 2005, Ms. Cuttino's attorney conceded that gender discrimination was not involved in her firing. This concession was wise, as several of the key decision-makers – including, notably, Ms. Albert-Smith – were female, Ms. Cuttino's replacement was female, and four of the five other ReBOCs at the time were female. Indeed, in her deposition Ms. Cuttino admitted that any discriminatory treatment she received was not gender-related. *See* App. to Mem. of Law in Support of Def.'s Mot. for Summ. J. [doc. #43-3] Ex. 2 at 232 [hereinafter "Cuttino Dep."] ("Q. Did you believe you were discriminated on because of your sex? A. No. It wasn't sex . . . ."). Therefore, Genesis is entitled to judgment on Ms. Cuttino's Title VII gender-discrimination claim. Similarly, Ms. Cuttino cannot maintain a violation of the Equal Pay Act, since it does not protect against "a [pay] differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Accordingly, Genesis is entitled to judgment on her Equal Pay Act claim as well.

#### B.   Race Discrimination

Race-discrimination claims are governed by the familiar burden-shifting framework set forth

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a *prima facie* case of discrimination by showing that: "1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the adverse action. If the defendant does so, the ultimate burden of proof shifts back to the plaintiff to demonstrate that the defendant's articulated justification is merely a pretext for discrimination. *See id.*

For the purposes of this decision, the Court assumes (though does not decide) that Ms. Cuttino can make out a *prima facie* case of racial discrimination, which requires only a *de minimis* showing. The burden thus shifts to Genesis to articulate a non-discriminatory reason for terminating Ms. Cuttino's employment. Genesis asserts, as it told Ms. Cuttino at the time of her firing, that the company terminated her employment "because of her lack of understanding of fundamental accounting and booking practices, and her history of bookkeeping and training errors, the most recent of which were her failure to timely and correctly complete the credit [applying] at Windsor Hall, which led the financials to incorrectly show bad debt, and her failure to train the bookkeeper and oversee proper accounting for residents' funds at Windsor Hall." Defendant's Statement of Undisputed Material Facts Pursuant to L. Civ. R. 56(a)(1) [doc. #43-4] at ¶ 74. Genesis's asserted justification is clearly a legitimate one, as it goes directly to the question of Ms. Cuttino's job skills and her job performance shortly before being fired.

Therefore, the ultimate burden of proof shifts back to Ms. Cuttino to prove that Genesis's

purported reasons are a pretext for race-based discrimination. Ms. Cuttino admits that she had made a number of bookkeeping errors that were identified in December 2001 and January 2002. *See* Plaintiff's Local Rule 56(a)(2) Statement of Material Facts in Dispute [doc. #50-1] at ¶¶ 38, 41, 44; Cuttino Dep. at 84-90, 123. These errors were significant enough that Ms. Lynn felt it necessary to write up a memorandum, which Ms. Cuttino signed, describing the errors and outlining corrective steps for Ms. Cuttino to follow. *See* App. to Mem. of Law in Support of Def.'s Mot. for Summ. J. [doc. #43-3] Ex. 9. The corrective steps required Ms. Cuttino to "review the adjustment process and the account audit procedure with" Ms. Lynn, to "complete an analysis audit form for all one-sided adjustments found" for certain clients in 2001, to meet with Ms. Lynn and Ms. Albert-Smith for a review of Ms. Cuttino's accounts-receivable analysis audits, and to meet with Ms. Lynn every Friday for a review of Ms. Cuttino's progress on such audits. *Id.* Such substantial measures evidence significant concern by Genesis about Ms. Cuttino's performance. And, indeed, Ms. Cuttino admitted during her deposition that the criticisms contained in the memorandum were justified. *See* Cuttino Dep. at 84-90, 123.

Nor does Ms. Cuttino deny that shortly before she was fired, Genesis discovered additional errors in an account for which Ms. Cuttino was responsible. A Genesis client, Windsor Hall Nursing Home, called Ms. Lynn on February 20, 2002, to complain that their account showed an unusually high expense. Def.'s Statement of Undisputed Material Facts Pursuant to L. Civ. R. 56(a)(1) [doc. #43-4] at ¶ 59. Ms. Lynn reviewed the account and discovered that the expense was due to the fact that credits had not been properly applied to patient accounts. As the ReBOC for the Windsor Hall account, Ms. Cuttino acknowledged these errors and that she was responsible for training the bookkeeper to apply those credits, and for ensuring that credit applications were done properly. *Id.*

at ¶¶ 60, 61. Ms. Cuttino also concedes that Ms. Lynn told her to correct the credit-application errors by the end of the month and that contrary to Ms. Lynn's instructions, this was not done. *Id.* at ¶ 65.

Nevertheless, Ms. Cuttino argues that she was not the one who created the errors (the bookkeeper did) and that she did not have access to the information necessary to correct the errors. *See* Pl.'s Local 56(a)(2) Statement of Material Facts in Dispute [doc. #50-1] at ¶¶ 62-64. More fundamentally, Ms. Cuttino maintains that even if Genesis was unhappy with her performance, the company was not justified in firing her for those problems; instead, Genesis should have "offer[ed] [her] a different position in the company." Cuttino Dep. at 237. Yet, Ms. Cuttino does not point to any other employee who committed similar acts and who was allowed to move into a different position in the company or to any company policy or practice of moving employees to other positions when they have failed to do their job. Nor has she submitted any evidence to suggest that in deciding to terminate Ms. Cuttino because of her admitted job performance problems, Genesis acted any differently than it has acted in other similar circumstances.

While Ms. Cuttino's unhappiness at her firing is understandable, the fact that she personally believes Genesis over-reacted to her acknowledged performance failures is not a sufficient reason to justify submitting this case to a jury. For an employment decision to give rise to a Title VII violation, the employer's stated justification must be more than unwise; it must also be pretextual. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 447 (2d Cir. 1999) ("'[A] Title VII plaintiff may not prevail by establishing only'" that the employer's proffered justification for its adverse employment discrimination was false, "'but must prove, in addition, that a motivating reason was discrimination.'" (quoting *Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d

8

116, 121 (2d Cir. 1997))). Ms. Cuttino argues that a jury should be allowed to decide whether the mistakes she made justify her firing. But in the absence of any evidence that Genesis acted with a discriminatory ulterior motive, a jury is not permitted to substitute its business judgment about what constitutes terminable conduct for that of the company – nor is this Court. *See Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) (noting that absent a showing of bad faith, "an employer who is sued on allegations of age discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury"); *Ailor v. First State Bank of Maynardville*, No. 91-5088, 1991 WL 150790, at *3 (6th Cir. Aug. 6, 1991) (rejecting plaintiff's discrimination suit because "[t]he [employer's] decision to save $40,000 by terminating two employees [including plaintiff] rather than one is the type of business decision for which a court is not permitted to substitute its judgment"); *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921-22 (2d Cir.1981) (employee may be discharged "on the basis of subjective business judgments, for any reason that is not discriminatory" (citation omitted)); *Moorer v. Verizon Communications, Inc.*, No. Civ.A. 03-1265, 2005 WL 2807140, at *9 (W.D. Pa. Oct. 27, 2005) (rejecting plaintiff's discrimination claim and recognizing that a court should not "impermissibly substitut[e] its own business judgment for that of the employer"). Here, there is simply no evidence that Genesis's justification for firing Ms. Cuttino was pretextual, let alone unwise. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 470 (2d Cir. 2001) (affirming a grant of summary judgment because plaintiffs failed to produce sufficient evidence to support a rational finding that defendant's legitimate, non-discriminatory business justifications were false).

Moreover, even if Ms. Cuttino could show that Genesis had obscured the true reason for her termination, she has not shown that the real reason has anything to do with her race. The sole basis

for Ms. Cuttino's charge of race-based animus is her belief that Ms. Lynn "targeted her because she was an assertive African-American employee." Plaintiff's Response to Defendant's Motion for Summary Judgment [doc. #49] at 5. Ms. Cuttino admits that no one at Genesis ever said anything to her directly about her race. *See* Cuttino Dep. at 56 ("Q. Did anybody say anything about your race? A. No."). She nevertheless maintains that Ms. Lynn's perception of her job performance was tainted by Ms. Lynn's discriminatory attitude towards assertive African-Americans. According to Ms. Cuttino, Ms. Lynn's attitude manifested itself in the February 2002 letter that described Ms. Cuttino as violent and insubordinate – characterizations that came from Ms. Lynn's description of her interactions with Ms. Cuttino. Ms. Cuttino denies that she has ever engaged in threatening behavior at Genesis and argues that Ms. Lynn's descriptions reflect negative stereotypes about African-Americans. *See* Pl.'s Response to Def.'s Mot. for Summ. J. [doc. #49] at 5; Cuttino Dep. at 61.

The Court does not agree that, under the circumstances, the February 2002 letter would properly support an inference of racial discrimination. Ms. Cuttino admits that no explicit mention of race was ever made – either in the letter or otherwise – and she acknowledges that she was replaced by another African-American. *See, e.g.*, *Banks v. AT & T Wireless, Inc.*, 113 Fed. Appx. 614, 615 (5th Cir. 2004) (rejecting plaintiff's discrimination claim where the plaintiff "was not replaced by someone outside the protected class"); *Huntley v. Community School Bd. of Brooklyn, New York School Dist. No. 14*, 543 F.2d 979, 984 (2d Cir. 1976) (finding it "significant that [the plaintiff] was replaced with another black" employee); *Offutt v. Gannett Satellite Information Network, Inc.*, No. 98 Civ. 0766, 1998 WL 872443, at *3 (S.D.N.Y. Dec. 14, 1998) (finding no inference of race discrimination where the plaintiff, a black employee, "was replaced by another

black man").

Ms. Cuttino's argument is founded entirely on the letter's description of her as aggressive and intimidating, which she claims are stereotypical terms for race discrimination. "[S]tereotyped remarks can certainly be evidence that [race] played a part' in an adverse employment decision." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989)). However, the Court does not share Ms. Cuttino's view that language such as "lying" and "violent" – standing alone – are racial code words. Moreover, Ms. Cuttino does not deny that she has a strong, assertive personality that might come across as intimidating to others; nor does she deny that she and Ms. Lynn had a "personality conflict." *See, e.g.*, Cuttino Dep. at 63, 232, 235. That Ms. Cuttino was described – whether unfairly or not – as threatening is simply insufficient to overcome Genesis's legitimate, non-discriminatory reasons for terminating her employment. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999) (affirming a grant of summary judgment where evidence did not support an inference of discriminatory animus and there was an "absence of evidence establishing any causal link between [the superior's] alleged discriminatory bias and [the employer's] decision to deny [the plaintiff] promotion"). Therefore, the Court grants judgment for Genesis on Ms. Cuttino's race-discrimination claims.

### C. Age Discrimination

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's protections extend to those age 40 or older. *Id.* § 631(a). When evaluating a plaintiff's age-discrimination claims, courts apply the same *McDonnell Douglas* burden-shifting test that

applies in the race-discrimination context. *See Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 (2d Cir. 2004).

Ms. Cuttino has made out a *prima facie* case of age discrimination. To be sure, two of the five other ReBOCs at the time of her termination – both of whom are still employed with Genesis – were older than Ms. Cuttino. Moreover, Ms. Albert-Smith, who made the decision to fire Ms. Cuttino in consultation with Ms. Lynn and Messrs. Cullerot and Dillon, was older than Ms. Cuttino as well. Nevertheless, Ms. Cuttino was in her forties when fired by Genesis, she was replaced by someone younger, and the direct supervisor with whom she clashed, Ms. Lynn, was also younger than Ms. Cuttino. In these circumstances, Ms. Cuttino has satisfied the *prima facie* prong of her obligation. *See Rosso v. PI Management Associates, L.L.C.*, No. 02 Civ. 1702, 2005 WL 3535060, at *17 (S.D.N.Y. Dec. 23, 2005) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage . . . ." (internal quotation marks omitted)). The burden then shifts to Genesis to articulate a non-discriminatory justification for its employment decision. As noted above, Genesis has met this burden by outlining a performance-based rationale for firing Ms. Cuttino, thereby shifting the ultimate burden of proof back to her to show that Genesis's articulated reason for its actions was pretextual and that the real reason for Genesis' actions was her age.

On the basis of the record produced by Ms. Cuttino, and even giving her the benefit of all reasonable inferences, she cannot meet this burden because, as explained above, she has offered no evidence that would permit a reasonable jury to conclude that Genesis's articulated reason for its action was false. Indeed, apart from her conclusory supposition that her performance was not sufficiently deficient to warrant termination, Ms. Cuttino has provided no basis whatsoever for a

jury to conclude that her termination was unrelated to her acknowledged and repeated performance issues. *See Kaplan v. Multimedia Entertainment, Inc.*, No. 02-CV-00447C, 2005 WL 2837561, at *8 (W.D.N.Y. Oct. 27, 2005) (granting summary judgment on plaintiff's age discrimination claim because "[c]onclusory allegations unsupported by any evidence are insufficient to defeat the defendant's motion for summary judgment"). For a jury to decide otherwise, even with all inferences drawn in Ms. Cuttino's favor, would require impermissible and baseless speculation. *See Johnson v. Connecticut Dept. of Corrections*, 392 F. Supp. 2d 326, 334 (D. Conn. 2005) (noting that summary judgment is appropriate "where the plaintiff has 'provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext'" (quoting *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985))). Therefore, the Court grants judgment for Genesis on Ms. Cuttino's age-discrimination claims.

### D. Retaliation

Ms. Cuttino may proceed on her retaliation claim even though the Court has rejected her underlying discrimination claims. *See Greaves v. St. Luke's/Roosevelt Hosp. Center*, No. 03 Civ. 7424, 2005 WL 627635, at *4 (S.D.N.Y. Mar. 17, 2005) ("A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint." (internal quotation marks omitted)); *see also Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999). Retaliation claims are also considered under *McDonnell Douglas*'s burden-shifting test. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). Ms. Cuttino claims that Genesis fired her in part because she raised concerns in her self-evaluation form that she was treated differently from other employees, most notably Michelle Gaul. Good-faith complaints about discriminatory treatment are certainly a protected activity. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 80 (2d Cir. 2001).

However, even assuming that she could make out a *prima facie* case, Ms. Cuttino's retaliation claim fails for the same reason that her age-discrimination claim does – namely, that she offers no evidence to suggest that her acknowledged performance problems were not the real reason for her termination. The only basis Ms. Cuttino offers to suggest that her firing was related to her complaints was their temporal proximity. But where, as here, a plaintiff was disciplined for poor job performance prior to engaging in the speech to which she ascribes her termination, bare temporal proximity loses its persuasive force. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Ms. Cuttino's retaliation accusation is particularly unpersuasive in view of the fact that following two of her earlier complaints about unequal pay, in April 1999 and sometime thereafter, Ms. Cuttino was given multiple pay raises by Ms. Albert-Smith. Admittedly, at this stage of the proceeding, Ms. Cuttino need not prove her case completely or adduce iron-clad evidence connecting her complaints to her termination. However, she must give the Court at least a minimal evidentiary basis from which a jury could reasonably conclude that Genesis's asserted justification for her termination was a subterfuge for retaliation. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (finding summary judgment appropriate where "[t]here is no material evidence of a causal relation between" plaintiff's speech and his termination). As she has not done so, the Court also grants judgment to Genesis on Ms. Cuttino's retaliation claims.

## IV

Also before the Court are Genesis's motions in limine [docs. ##44 & 45] to preclude Ms.

Cuttino from presenting certain evidence at trial and for attorney's fees and costs associated with taking Ms. Cuttino's March 15, 2005, deposition. Because the Court has dismissed all Ms. Cuttino's discrimination claims, the portion of the motions seeking to preclude evidence is moot. Genesis also seeks sanctions against Ms. Cuttino for her alleged failure to comply with discovery requests, which resulted in a wasted deposition. Prior to the March 15, 20005, deposition of which Genesis complains, the Court had ordered that "If Plaintiff is unable to provide the discovery requested within the extended discovery schedule, the Court will entertain a motion to preclude and/or for other sanctions." Notice of E-Filed Order [doc. #39].

>Federal Rule of Civil Procedure 37(b)(2) provides:
>
>If a party . . . fails to obey an order to provide or permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just . . . .
>. . .
>In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

"'[I]mposition of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure.'" *New York v. Almy Bros., Inc.*, No. 90-CV-818, 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998) (quoting *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y.1995)). Without delving too deeply into the specific details of Genesis's discovery grievance or Ms. Cuttino's explanations, the Court is satisfied that whatever misbehavior might have occurred does not appear to constitute the "flagrant bad faith and callous disregard" necessary to justify Rule 37 sanctions. Therefore, Genesis's request for attorney's fees and costs are denied.

**V**

In sum, the Court GRANTS Genesis's summary judgment motion [doc. #43] and DENIES its motions in limine [docs. ##44 & 45].  **The Clerk is directed to close the file.**


IT IS SO ORDERED,


/s/      Mark R. Kravitz
        United States District Judge

**Dated at New Haven, Connecticut: January 11, 2006.**